# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

ALEXANDER STROSS

**Plaintiff,**

vs.

RIVER'S EDGE REALTY, LLC
d/b/a AUSTIN OPTIONS REALTY,
DANIEL R. CASTRO, AND
ALISHA AUSTIN

**Defendants.**

CIVIL ACTION # 1:17-cv-391

Defendant River's Edge Realty LLC's
and Daniel R. Castro's Reply to Motion for
Leave to file Third Amended
Answer, Affirmative Defenses, and
Counterclaims

---

## DEFENDANTS RIVER'S EDGE REALTY LLC d/b/a AUSTIN OPTIONS REALTY'S AND DANIEL R. CASTRO'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants River's Edge Realty LLC d/b/a Austin Options Realty ("River's Edge") and Daniel R. Castro ("Castro") file this Reply to Plaintiff's Response to Motion For Leave to File Third Amended Answer (Dkt. #63).

### I. PLAINTIFF HAS FAILED TO MEET HIS BURDEN

1.1  Plaintiff has failed in his burden to show *specific facts* that demonstrate prejudice, bad faith, or undue delay as required by *Foman v. Davis*, 371 U.S. 178, 182 (1962). The proceedings will not be delayed because Defendants are well within the deadline to file amended pleadings (July 27, 2018). Moreover, when this litigation began, Plaintiff agreed to allow amended pleadings before July 27, 2018 to begin with. Therefore, nothing has been or will be delayed.

1.2  Plaintiff did not articulate any need to conduct additional discovery. This is because most of the affirmative defenses and counterclaims are points of law. Moreover, the discovery deadline has not yet expired.

1.3     Plaintiff failed to articulate any *specific facts* showing how he would be prejudiced by the filing of the Third Amended Answer. In fact, Plaintiff's response shows that he has already conducted a significant amount of research on the merits of Defendant's affirmative defenses and counterclaims and has shown himself well prepared to respond on the merits when the time comes.

1.4     Plaintiff also failed to show any specific facts demonstrating bad faith. What plaintiff calls "bad faith" merely amounts to *undisputed* facts and black letter law that have been recently discovered and which have the potential to eviscerate Plaintiff's entire lawsuit. If these defenses and counterclaims are allowed it would make this case easily disposed of on summary judgment and would avoid a further waste of this court's precious resources.

## II.     PLAINTIFF DOES NOT DISPUTE THE FOLLOWING

2.1     Plaintiff's response relies on quotes from various district courts outside the Fifth Circuit and non-judicial legal articles, but does not provide any pertinent evidence that make those quotes applicable. Despite the empty rhetoric, plaintiff has never disputed the following:

(1)     River's Edge Realty, LLC ("River's Edge") and attorney Daniel R. Castro ("Castro") never saw or had possession (physically or digitally) of the photos in question before this lawsuit began. Therefore, it was physically and legally impossible for them to use the photos in violation of anyone's copyrights. Stross has no response to this.

(2)     Alisha Austin ("Austin") never uploaded the photos directly to the River's Edge website because she did not have the technical ability or the authorization codes required to do so. Stross has no response to this.

(3)     The only reason the photos appeared on the River's Ede website is because they appeared on the websites of *every agent and broker* in Texas who subscribes as a "passive recipient" to the ABOR IDX feed. Stross knew this and chose to sue River's Edge and Castro personally anyway.

(4)     Stross himself and his "sponsored agent" Brittany Murphy personally uploaded the *very same photos* to the ABOR MLS on two separate occasions long before Austin did. ABOR has provided Audit Sheets showing that Stross and Murphy (in 2014 and again in 2015) personally uploaded the same photos to the ABOR MLS *using Stross' personal broker license number*. See Eleven Separate Listings at Exhibit A.1 - A.11. Random strangers do not have the legal authority or the membership access to upload photos to the ABOR MLS. Only licensed brokers and agents *acting on behalf of a specific client* whose houses they are selling are allowed to do so. See ABOR Terms and Conditions of Use, attached as Exhibit "D," and Definition of "Participant" and "Subscriber" attached hereto as Exhibit "B." In posting pictures of Centerra's houses on the MLS, Stross and Murphy represented to the world that they were acting as agents of Centerra Homes. Indeed, if they were not representing Centerra, these representations constitute fraud and deceptive advertising in violation of TREC Rules 535.156; and 535.155. In order to avoid an admission of fraud, Stross has been unwilling to claim he posted the pictures in question without Centerra's permission. He simply claims there is no "written" listing agreement. There was however, a "verbal" listing agreement, which is all that is required. There had to be *some sort of* agreement between Centerra and Stross – otherwise, Stross committed fraud when he represented to the world that he had authority to sell Centerra's houses.[1] Stross has no response to this "Catch-22" issue.

(5)     TREC itself has now certified that at all times Brittany Murphy (Stross' ex-wife) was a licensed agent "sponsored by" Stross' brokerage while she was selling Centerra's homes. See Exhibit "C." Yes, there is an exemption in the law that allows Centerra to hire unlicensed sales representatives. But in this case, Centerra *chose to hire* a licensed agent and her sponsoring broker. The reason? Unlicensed sales representatives do not have legal authority or the membership privileges to market houses on the ABOR MLS (which has nationwide reach). Only members of ABOR are

---

[1] Because Stross has not been forthcoming on this issue, Defendants have sent deposition on written questions to Centerra, and are awaiting responses.

allowed to use the ABOR technology in exchange for a membership fee. Without a licensed agent, the only customers that would see the builder's houses are those that stumble on the builder's website or see a billboard or some other printed marketing material of very limited circulation. Therefore, builders routinely enter into verbal listing agreements with licensed agents who are members of ABOR so they can reach millions of potential buyers when ABOR "pushes out" its content to every agent and broker in Texas who passively subscribes to the "IDX feed" (including to the River's Edge website). This is the only reason Centerra entered into a verbal listing agreement with a licensed agent, and her "sponsoring broker" Stross. Stross has no response to this.

(6) It is legally impossible to hire a licensed agent without hiring her sponsoring broker. See Texas Occupations Code Sec. 1101.351("A licensed sales agent may not engage or attempt to engage in real estate brokerage unless the sales agent is sponsored by a licensed broker and is acting for that broker;" and TREC Rule 535.2 (all listing agreements must exist at the broker level). Thus, even if Centerra thought it was hiring Brittany Murphy to list its homes for sale, *as a matter of law*, it was actually hiring Stross' brokerage. *Id.* Stross has no response to this.

(7) The Fifth Circuit has recently ruled that when Stross and his "sponsored agent" Murphy personally uploaded the photos to the MLS, Stross granted to ACTRIS an "irrevocable, paid up, royalty free, right and license" to use the photos, and that ACTRIS then granted a sublicense to all of its "Participants" and "Subscribers" which allows them to be passive recipients of the IDX feed. *See Stross v. Redfin Corp.*, 2018 U.S. App. LEXIS 8913 (5th Cir. April 9, 2018). ABOR automatically "pushes out" the photos to all subscribing member's websites whenever Stross or his "sponsored agents" upload new photos in a new listing to the MLS. Before he filed this lawsuit, Stross knew that *the only reason* the photos appeared on the River's Edge website was because it was one of thousands of passive recipients of the IDX feed. Stross knew that River's Edge and Castro had never seen or possessed the photos in question before the lawsuit began. Stross knew that Centerra *only sent* the

photos directly to Alisha Austin, who was operating under her own broker's license. Stross has no response to this troubling issue.

(8)     The Fifth Circuit has now ruled that the sublicense issue is affirmative defense that must be pled. *Id.* Stross has no response to this.

(9)     The Fifth Circuit in *Redfin* was not called upon to review or analyze the language in the ABOR Terms and Conditions of Use, which Stross agreed to when he himself became an ABOR "Participant" many years ago. See Exhibit "E." That language is as follows: "By the act of submission of any property listing data to ACTRIS or into the MLS Compilation, You thereby assign to ACTRIS Your rights and interest in the property listing data including Your right to copyright such property listing data separately or as part of the MLS Compilation." . . . . "All right, title, and interest in the MLS Compilation, including all intellectual property rights, shall at all times be owned and remain vested with ACTRIS."). Because the Fifth Circuit's did not have the benefit of this language upon which to base its decision, it *could not have ruled* that Stross had standing to sue *despite this language*. Therefore, this issue is a matter of first impression before this Court. Since Stross no longer owns the photos or the copyrights in question, his claims can now easily be dismissed for lack of standing. Stross has no response to this troubling language in the Terms and Conditions of Use.

(10)    It is black letter law that all Texas laws related to the issues of vicarious and contributory infringement are preempted. See 17 U.S.C. 301(a). Stross has no response to this. Therefore, Stross is required to satisfy the stringent federal law elements required to show vicarious and contributory infringement. After more than a year of discovery, Stross has failed to produce any tangible evidence that explains why River's Edge and Castro are even in this lawsuit. A motion for summary judgment will soon be forthcoming.

(11)    Even if Texas law were not preempted, the statutes and regulations regarding "broker responsibility" only serve to make Austin responsible for her own conduct as a broker. TREC has

now certified that Austin was not an agent "sponsored by" River's Edge or Castro when she posted the photos to the ABOR MLS, and that at all times she was acting as her own broker. See Exhibit "F." Therefore, under black letter Texas law, as a licensed broker, Austin is responsible for her own conduct. Moreover, as a matter of law, River's Edge and Castro are *not responsible for* Austin's conduct because they were not her "sponsoring broker." Stross knew Austin had her own broker's license before he filed this lawsuit because it is a matter of public record. Stross has no response to this.

*(12)* It is black letter law that "derivative rights" belong to the original creator of the underlying copyrightable work. 17 U.S.C §103. Stross has not denied that the photos he took were of someone else's copyrighted designs. He certainly did not design or build the homes in question. While it may be permissible for tourists to take snapshots of tall buildings in New York City, *it is illegal* for them to then *register those snapshots* at the U.S. Copyright Office and try to sell them on the open market without the signed written consent of the creator of the underlying architectural design. See *Ets-Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068 (9th Cir. 2000) (explaining that if the "work" at issue is derived from a previous work that is "copyrightable," the "work" at issue is not capable of copyright protection unless it was registered with the written consent of the creator of the underlying work). The case law Stross cites only addresses the "right to photograph" public buildings. It does not address the right to then "register" derivative works with the U.S. Copyright Office without the signed written consent of the creator of the underlying design. *Id.* In fact, the case Stross relies on did not involve a "derivative rights" claim at all. The lawsuit was based on an architectural magazine's having given *credit to the wrong architect* for designing the structure in question. The court properly dismissed the copyright claims because the plaintiff failed to satisfy the required "copying" element. However, the court kept in place the "rights attribution" claim under the Lanham Act which was based on "false designation of origin."

(13) Stross failed to quote any language in 17 USC 102(a) (right to photograph public buildings) that trumps the "derivative rights" statute cited above. The reason? There is none. Accordingly, Stross was still required to obtain the signed written consent of the designer of the underlying architectural works before registering the photos with the U.S. Copyright Office. *Id.* Stross has no response to this.

(14) ABOR Rule 2.13 requires a licensed agent to post an "image" when uploading a listing to the MLS. The word "image" is not defined. However, the rule does state, "Digital images submitted to MLS *shall only contain photos* pertinent to the listed property, floor plans of the listed property, and renderings of the listed property or plat maps" (emphasis added). It is this rule coupled with Stross' fiduciary duty as Centerra's broker of record that required him to post good quality photos in order to adequately represent Centerra's interests (and put Centerra's interests above his own). Yes, perhaps Stross could have posted a "crayon drawing" of the houses, but he knew this would not satisfy his fiduciary duty. So, he posted good quality photos. A broker is not "required" to take the pictures himself. *But he saves money by doing so*. Stross could think of no better photographer than himself. So, he took the pictures and posted them, knowing that in doing so he was transferring all copyrights (if any) to ACTRIS, and granting it an "irrevocable" license to use them; and that ACTRIS would then automatically grant a sublicense to all of its Participants and Subscribers (including Defendants). See Fifth Circuit's ruling in *Redfin*. Stross has no response to this.

(15) The above facts and laws *remain undisputed and uncontested*. These are the uncontested facts and laws that Stross claims were filed in "bad faith" are "dilatory," "serve no purpose," and are "frivolous" and "insufficient."

If the Court allows Defendants to file their Third Amended Answer, it will allow them to then file a quick motion for summary judgment which will easily dispose of this case so that the Court can go on to address more important cases.

Respectfully submitted,
CASTRO & BAKER, LLP

By: /s/ Daniel R. Castro
    DANIEL R. CASTRO
    State Bar No. 03997390
    7800 Shoal Creek Blvd.
    Suite 100N
    Austin, Texas 78757
    512.732.0111-phone
    dcastro@teknolaw.com

**ATTORNEY FOR DEFENDANTS/CROSS-PLAINTIFFS/COUNTERPLAINTIFFS**
**DANIEL R. CASTRO AND**
**RIVER'S EDGE REALTY, LLC d/b/a**
**AUSTIN OPTIONS REALTY**

By:   /S/ M. Forest Nelson
      M. FOREST NELSON
      SBN: 14904625
      BURT BARR & ASSOCIATES, L.L.P.
      203 E. Colorado Blvd.
      Dallas, Texas 75203
      (214) 943-0012
      Facsimile: (214) 943-0048
      fnelson@bbarr.com

**ATTORNEY FOR DEFENDANT**
**RIVER'S EDGE REALTY, LLC d/b/a**
**AUSTIN OPTIONS REALTY**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Defendants' Reply to Plaintiff's Response to Motion for Leave to File Third Amended Answer, Affirmative Defenses and Counterclaims was transmitted by ECF filing to Alexander Stross through his counsel of record R. Buck McKinney, at 408 W. 11th St., Fifth Floor, Austin, Texas 778701 and Alisha Austin, through her counsel of record, Michael J. Smith, 8310 N. Capital of Texas Hwy., Suite 150, Austin, Texas 78731, on July 9, 2018, pursuant to FRCP 5.

        /s/ M. Forest Nelson
        M. FOREST NELSON